IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-07-15-KI |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| VICKY VILLALOBOS and BRUNO FABIAN ARMENTA, | ) ) | |
| | ) | |
| Defendant. | ) | |

KING, J.

    The matter before the court is defendants' motions for a <u>Franks</u> hearing (Docs. # 19, 24). Defendant Villalobos is charged with Possession with Intent to Distribute Methamphetamine, in violation of 21 USC 841(a)(1) and (b)(1)(A); and Possession with Intent to Distribute Cocaine, in violation of 21 USC 841(a)(1) and (b)(1)(C). Defendant Armenta is also charged with the above two counts, in addition to Illegal Possession of (various) Firearms by an Alien Illegally and Unlawfully in the United States, in violation of 18 USC 922(a)(5)(A) and 924(a)(2)(d). Both

Page -1- OPINION AND ORDER

defendants were arrested on May 11, 2006.

Armenta was arrested at the outset of the warrant search on an outstanding Washington warrant for Malicious Mischief. Villalobos was arrested when officers discovered contraband during the search. Both defendants contend that the affidavit in support of the warrant application, prepared by Umatilla County Deputy Rhiana Sheridan (Deputy Sheridan) contains inaccuracies and misstatements and omits exculpatory information. Accordingly, defendants ask this court to conduct a Franks hearing to determine whether the warrant was supported by probable cause. For the reasons that follow, these motions are DENIED.

## FACTS

On May 6, 2006, Officer Knudson of the Walla Walla, Washington Police Department (WWPD) stopped a vehicle driven by Fernando Serrano Sanchez (Sanchez), and arrested him for possession of marijuana. Upon searching the vehicle, WWPD Detective Kevin Bayne (Bayne) discovered sketch pads of drawings depicting images of graffitti recently marked on private and government property in Walla Walla. These drawings depicted the words "Stain," "FPC," "Ferno," "509," and an image of an eyeball. These images are believed to be "tags," or signatures, of the members of a graffiti group called "FPC" or Freestyle Phugitive Crew, whose members use the tag names Stain, Destroyer, Snafu, Eerie and Dynasty. Following a warrant-search of Sanchez' home, additional evidence of his involvement with graffiti was found, including a photograph of a wall at Davis Elementary School in College Place, Washington, which depicted the word "Rawknezz," a t-shirt depicting the words "Bruno" and "Fernando" in graffiti-style writing, and an internet address, which listed the members of FPC to include Bruno Armenta "aka Rawknezz Monsta." When confronted with this evidence, Sanchez admitted that

Page -2- OPINION AND ORDER

FPC was a graffiti group, and that Bruno Armenta was a member.  Sanchez also confirmed that Bruno Armenta was married to Vicky Villalobos.[1]

On May 7, 2006, Detective Saul Reyna (Detective Reyna) made a photocopy of the envelope of an outgoing inmate letter at the Walla Walla County Jail, which was addressed to Villalobos at 842222 Prunedale Road, Milton-Freewater, Oregon 97862.  Milton-Freewater, Oregon is located about 10.5 miles from Walla Walla.  Detective Reyna discerned that while this address did not exist, 84222 Prunedale Road did exist, and was owned by Jose Villalobos.  A Walla Walla records system showed that Vicky Villalobos was a name associated with past addresses also associated with Jose Villalobos.  Accordingly, Detective Reyna drove by the residence and saw a Black Dodge Durango parked in the driveway, which he had seen Villalobos driving three weeks earlier.

On May 10, 2006, Detectives Reyna and Bayne drove by the residence again, and again saw the Dodge Durango parked in the driveway.  Detective Reyna confirmed the license plate was the same as the car he earlier observed Villalobos driving.  Detective Reyna called Umatilla County Deputy Rhiana Sheridan (Sheridan) for assistance in obtaining a search warrant of 84222 Prunedale Road.  Deputy Sheridan told Detective Reyna that she was familiar with the FPC tag names Snafu, Eerie, and Stain, because her department was investigating incidents where these names had been painted on the front of a school around the corner from 86222 Prunedale Road.

Deputy Sheridan prepared an affidavit, setting forth facts she believed pointed to the existence of probable cause to conclude that defendant Armenta lived at 86222 Prunedale Road,

---

[1] According to the government, WWPD Detective Saul Reyna and Bayne assisted in removing someone from the wedding reception of Villalobos and Armenta, after Villalobos requested assistance.

Page -3- OPINION AND ORDER

that he was a member of FPC and used the tag name "Rawknezz," and that he was responsible for defacing property in Milton-Freewater and Walla Walla. Deputy Sheridan incorporated a narrative prepared by Detectives Reyna and Bayne into her affidavit, setting out the history of their investigation into FPC. The warrant issued on May 10, 2006.

On May 11, 2006, Armeta was immediately arrested, on an outstanding Washington warrant for Malicious Mischief, when he answered the door at 86222 Prunedale Road. Officers noted the tattoo on Armeta's right shoulder of the FPC tag "Stain." Villalobos was lying in bed with her 5 year-old nephew when officers entered the residence. Miranda warnings were read, as well as the search warrant. Armeta immediately spoke up and defended his "art" of "making ugly walls beautiful." He pointed to his "art" around the house, and said he had graffitti materials downstairs which he offered to show officers.

Officers systematically searched the residence, uncovering evidence of graffiti, such as markers and cans of spray paint. After officers allowed Villalobos to use the bathroom, they located two firearms and a box of ammunition in a bathroom cabinet. As the search for graffitti evidence continued, additional firearms were found in the kitchen, along with a large quantity of methamphetamine (gross weight 221.4 grams, actual weight 66.4 grams), cash, and drug dealing paraphernalia. At this point, Deputy Sheridan arrested Villalobos and terminated the search in order to obtain a warrant to search specifically for more evidence of drug trafficking. Villalobos told Officer Sheridan she wanted to cooperate and stated that all the drugs in the house had already been found. Villalobos also stated that she hoped she would be charged in Oregon, rather than Washington, and that federal court would be even better. When asked if any of the firearms were stolen, Villalobos said at least one, and possibly two were "hot."

Following issuance of a second warrant, a detection dog was used to aid in further searching of 84222 Prunedale Road. Additional evidence of graffiti vandalism and narcotics manufacturing and trafficking were uncovered in the residence, along with additional firearms and over $9000 in U.S. currency. Officers also observed two candles burning in the kitchen next to an image of Jesus Malverde[2], the so-called patron saint of narcotics traffickers.

## DISCUSSION

**I.     Legal Standards**

In Franks v. Delaware, 438 U.S. 154, 164-65 (1978), the Supreme Court held that intentionally or recklessly submitting false statements in a warrant affidavit violates the Fourth Amendment. A defendant is entitled to a Franks hearing if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Id. at 155-56. To meet his burden, the defendant "should point out specifically the portion of the warrant affidavit that is claimed to be false" and submit a statement of supporting reasons. Id. at 171. Allegations of negligence or innocent mistake will not suffice. Id.

If perjury or reckless disregard for the truth is established by a preponderance of the evidence, the court must set the "false" material aside and determine whether the "remaining content is sufficient to establish probable cause[3]." Id. at 156. If not, "the search warrant must be

---

[2] According to the government, law enforcement officers frequently encounter shrines and other forms of homage to Jesus Malverde in the homes of Mexican and Mexican-American drug smugglers.

[3] Probable cause exists if "in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992).

voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id.

Courts have employed a similar analysis when a defendant alleges the warrant affidavit is fraught with material omissions. In United States v. Pace, 898 F.2d 1218, 1232 (7th Cir. 1990), the Seventh Circuit considered whether the lower court erred by refusing to hold a Franks hearing based on defendant's contention that a material omission in the supporting affidavit rendered a warrant invalid. The court found that "[t]he rule of [Franks,] prohibiting a police officer from deliberately or recklessly presenting false material information in a warrant application, also prohibits the officer from deliberately or recklessly omitting material information from the application." Id. at 1232. The defendant in Pace argued that the affidavit in support of a warrant to search his residence omitted to mention that a search of his friend's residence, subsequent to an informant's tip that defendant had entered with a suspicious bag of white powder, did not uncover drugs. The defendant also alleged that the officer who authored the affidavit did not know the name of the informant, or whether he was reliable. The Seventh Circuit held that the lower court did not err by declining to hold a Franks hearing because (1) the search of the friend's house did uncover empty bags containing cocaine residue; and, (2) defendant was only speculating as to whether the affiant knew the name of the confidential informant, so his request was nothing more than "a mere desire to cross-examine." Id. at 1228; see also Franks, 438 U.S. at 171 (stating that to mandate an evidentiary hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine"); see also United States v. Chavez-Miranda, 3-6 F.3d 973, 979 (9th Cir. 2002)(bare assertion of deliberate omissions falls short of the preponderance of the evidence that Franks requires).

Page -6- OPINION AND ORDER

**II.     Analysis**

Defendants argue that Officer Sheridan's characterization, in the warrant affidavit, of FPC as a "graffiti gang" was as "unsupported conclusion," and her failure to state that they were also engaged in break-dancing activities was a material omission.  Defendants also argue that the facts did not support the conclusion that Armenta was engaged in criminal mischief, or that he lived at 84222 Prunedale Road.  Armenta also argues that Officer Sheridan's allegations "carry no significance" because she "has not demonstrated any training, experience or knowledge of taggers."

The government maintains the truthfulness of all statements in the warrant affidavit, and denies material omissions.  The government argues that it was reasonable to presume that Villalobos and Armenta lived together at the residence where Villalobos received mail and her car was parked, because they were married.  The government argues that while FPC may have been involved in the lawful activity of break-dancing, probable cause existed, by way of evidence obtained from the Sanchez search and admissions, that FPC was also involved in the illegal activity of graffiti.  This fact, together with the similarity between the graffiti found in Walla Walla, and that found around the corner from defendants' house in Milton-Freewater, supported the conclusion that, more probably than not, evidence of graffiti vandalism would be found where Armenta resided, according to the government.

I agree with the government.  Significantly, defendants do not allege intent or reckless disregard for the truth on Officer Sheridan's part.  Allegations of negligence or innocent mistake will not suffice to entitle defendants to challenge the sufficiency of the affidavit.  In any event, the facts in the narrative prepared by Detectives Reyna and Bayne, and incorporated into Officer

Sheridan's affidavit, support finding that more probably than not Armenta was engaged in criminal mischief, and that he lived at the same residence where his wife received mail and parked her car. Further, even if the break-dancing activities of FPC had been mentioned in the affidavit, probable cause would still exist to believe FPC also engaged in graffiti vandalism.

There isn't any evidence to support defendants' assertion that Officer Sheridan should have stated in the affidavit that her "actual target was drug dealing by [Villalobos]" not "the purported 'tagging' by [Armenta]." Accordingly, this statement is not considered a material omission.

Finally, I reject defendants' contention that the address of their residence, obtained from the envelope of a letter in the inmate mailbox at the Walla Walla County Jail, must be excised from the affidavit when considering whether probable cause exists. Defendant argues the letter was illegally seized, in violation of the Fourth Amendment, when Detective Reyna took it out of the outbox to photocopy the envelope. The Supreme Court has held that even though first-class mail is protected by the Fourth Amendment from unreasonable search and seizure, it is not beyond the reach of all inspection. United States v. Van Leeuwen, 397 U.S. 249, 251-52 (1970). There is no reasonable expectation of privacy in the exterior of an envelope, because "[s]enders knowingly [expose] the outsides of the mail to postal employees and others...". United State v. Choate, 576 F.2d 165, 177 (9th Cir. 1980). Furthermore, in this case, inmates were on notice that their letters were subject to law enforcement inspection, pursuant to Walla Walla County Jail Inmate Rules. See Gov. Attach. 2; see also United States v. Hernandez, 313 F.3d 1206, 1210 (9th Cir. 2002).

Villalobos asserts in her reply that even if she didn't have a reasonable expectation of

Page -8- OPINION AND ORDER

privacy in the exterior of the envelope, she was only on notice that jail staff could inspect inmate mail, and since Detective Reyna was not a member of the jail staff, his inspection was unlawful. Regardless of the designation of the government employee who allegedly "seized" the letter, a Fourth Amendment violation will not lie where there isn't any reasonable expectation of privacy in the item searched or seized.  Accordingly, Detective Reyna's inspection of the outside of the envelope did not violate Villalobos' Fourth Amendment rights.

If evidence at the suppression hearing gives me reason to reevaluate my analysis of the envelope/address issue, I will revisit defendants' motion for a <u>Franks</u> hearing at that time.  I will address the remainder of defendants' arguments for suppression of evidence following the suppression hearing.

## CONCLUSION

For the reasons given above, defendants' motions for a <u>Franks</u> hearing (Docs. # 19, 24) are DENIED.

IT IS SO ORDERED.

Dated this   11th   day of May, 2007.

          /s/ Garr M. King
          Garr M. King
          United States District Judge