IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,   CR-07-15-KI

        Plaintiff,   OPINION AND ORDER

v.

VICKY VILLALOBOS and BRUNO FABIAN ARMENTA,

        Defendant.

KING, J.

    The matters before the Court are Defendants' Motions to Suppress (#s 17, 28), and oral motions for reconsideration of the Court's May 11, 2007 order (#51) denying Defendants' motions for a *Franks* hearing (#s 19, 24). In that order the Court reserved the right to change its finding that Detective Saul Reyna's inspection of the outside of a letter in the Walla Walla County Jail, addressed to Villalobos, was not a search in violation of the Fourth Amendment.

    On August 22, 2007 the Court held an evidentiary hearing on these motions. The Court heard testimony from Detective Saul Reyna, a City of Walla Walla Police Officer, which the Court found to be reliable. Since the parties are familiar with the facts of this case the Court will not restate them here. However, the Court finds that, contrary to its prior recitation of facts in the Court's order denying Defendants' motions for a *Franks* hearing (#51), Fernando Sanchez did not admit that "FPC" was a graffiti gang. Rather, in his May 7, 2006 interview he maintained that FPC was a breakdancing group.

Page -1- OPINION AND ORDER

For the reasons that follow, these motions are DENIED.

DISCUSSION

I. **Motion for Reconsideration**

At the evidentiary hearing Defendants urged the Court to reconsider its May 11, 2007 order denying their motion for a *Franks* hearing, though they did not specify the basis for the motion under Federal Rule of Civil Procedure (FRCP) 60. Defendants have not offered any reason justifying relief from the denial of a *Franks* hearing. *See e.g.* FRCP 60(b)(6)(allowing the court to relieve a party from a final judgment or order for "any other reason justifying relief from the operation of the judgment").

Defendants still have not made the substantial preliminary showing they must make before the Court will conduct a *Franks* hearing to examine the sufficiency of a warrant affidavit. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)(defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit").

Defendants argue that the failure of the affidavit to state that Fernando Sanchez told officers that Freestyle Phugitives Crew (FPC) was a breakdancing group, and that he never said it was a graffiti gang, was a material omission. Defendants point out that the portion of the affidavit prepared by Detective Reyna states that Sanchez "admitted to the existence of [FPC]," and the portion prepared by Officer Sheridan states that Detective Reyna told her he had "identified members of a graffiti gang known as 'FPC'." The inference, according to Defendants, is that Sanchez admitted FPC was a graffiti gang. Yet, Defendants did not put Officer Sheridan on the stand, nor even question Detective Reyna, who testified on behalf of the government,

about this allegedly material omission, even though he prepared the disputed portion of the affidavit. On this record there is no basis for me to find that Officer Sheridan intentionally, or with reckless disregard for the truth, omitted Fernando Sanchez' statement that FPC was a break-dancing group. Accordingly, I decline to reconsider my prior order denying Defendants' motions for a *Franks* hearing.

## II.   Motion to Suppress

### A.   Letter

As noted above, the Court previously ruled that no Fourth Amendment violation occurred when Detective Reyna sorted through the outgoing inmate mailbox and discovered a letter addressed to Villalobos, from which he garnered Defendants' residential address. The Court found that Villalobos did not have a reasonable expectation of privacy in the exterior of the envelope once it was placed into the outgoing inmate mailbox. *See United States v. Choate*, 576 F.2d 165, 174 (9th Cir. 1978) (discussing collection of information from the exterior of mail). Nevertheless, at the evidentiary hearing Defendants asked the Court to reconsider whether a seizure nonetheless occurred by Detective Reyna's act of physically moving the envelope.

Defendants contend that this case is analygous to *Arizona v. Hicks*, 480 U.S. 321 (1987), in which the Supreme Court held that an officer's act of moving stereo equiptment to obtain a serial number constituted a search, even though no seizure occurred when he recorded the serial numbers on the equiptment. According to Defendants, even if Villalobos did not have a reasonable expectation of privacy in the envelope, and thus no seizure occurred when Officer Reyna recorded Villalobos' address, the act of sorting through the letters in the mailbox constituted a warrantless search because Villalobos' letter was not on the top of the stack, and

thus was not in Officer Reyna's plain view.

Citing *U.S. v. Quoc Viet Hoang*, 486 F.3d 1156, 1158 (9th Cir. 2007), the government maintains that plain view case law does not apply to mail that has been deposited into the shipping channels. I concur.

An addressee has both a possessory and a privacy interest in a mailed package; a possessory interest in the timely delivery of the package, *U.S. v. Hernandez*, 313 F.3d 1206 (9th Cir. 2002), and a privacy interest in the contents, but not the exterior, of the package, *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). In this case only Villalobos' possessory interests in the letter are at issue, as Villalobos concedes, and the law is clear, that she did not have a privacy interest in the exterior of the envelope. *See e.g. Katz v. United States*, 389 U.S. 347, 351 (1967)("[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection").

The court looks to the extent of the interference with the defendant's possessory interest in the property to determine whether it rises to a "seizure" under the Fourth Amendment. *U.S. v. England*, 971 F.2d 419, 420 (9th Cir. 1992). Physical movement of the property, without more, will not constitute a "seizure." *See United States v. Brown*, 884 F.2d 1309, 1311 (9th Cir. 1989) (diversion of suitcases to cargo hold to conduct a search was not a seizure because "the brief detention of [the] bags would have in no way interfered with [the defendant's] travel or frustrated his expectations with respect to his luggage"), *cert. denied*, 493 U.S. 1025 (1990); *see also United States v. Place*, 462 U.S. 696, 718 n. 5 (1983) (Brennan, J., concurring) (" 'the mere detention of mail not in [the defendant's] custody or control amounts to at most a minimal or technical interference with his person or effects, resulting in no personal deprivation at all' ")

(quoting *United States v. Place*, 660 F.2d 44, 53 (2d Cir.1981), *aff'd*, 462 U.S. 696 (1983)).

An addressee's possessory interest boils down to an interest in the package's timely delivery. *England*, 971 F.2d at 420-21. "[L]aw enforcement interactions with packages that cause a *de minimis* interference with the flow of delivery do not implicate the Fourth Amendment." *See Quoc Viet Hoang*, 486 F.3d 1156, 1162 n. 3.

In this case, Detective Reyna testified that the letter was removed from the outgoing inmate mailbox for a few minutes while he photocopied the envelope. This process did not interfere with the flow of the delivery of the letter because it occured after normal business hours. Accordingly, the Court finds that Detective Reyna's interference with Villalobos' possessory interest in the timely delivery of the letter was *de minimus*, and did not violate her Fourth Amendment rights.

B.    **Facial Insufficiency**

Finally, Defendants move to suppress all evidence seized from their residence on the basis that the four corners of the affidavit in support of the warrant application did not contain probable cause. The government argues that the affidavit is repleat with probable cause to believe Armenta was the link between Fernando Sanchez' clear involvement with graffiti in Walla Walla, and similar graffiti tagging that appeared in Milton-Freewater. Alternatively the government contends that the officers who executed the warrant acted in good faith, so in any event the motion should be denied based on *United States v. Leon*, 468 U.S. 897, 920-22 (1984).

The existence of probable cause depends on whether, in the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A magistrate's determination of probable

Page -5- OPINION AND ORDER

cause will not be reversed absent a finding of clear error. *United States v. Schmidt*, 947 F.2d 362, 371 (9th Cir. 1991). Thus, the standard of review is "less probing than *de novo* review and shows deference to the issuing magistrate's determination." *United States v. Hernandez*, 937 F.2d 1490, 1494 (9th Cir. 1991) (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986)). When the issuing Magistrate relied only upon the supporting affidavit to issue the warrant, as here, only that information found within the four corners of the affidavit may be considered in determining the existence of probable cause. *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (internal quotations omitted).

In the Ninth Circuit, "[w]e require only a reasonable nexus between the activities supporting probable cause and the locations to be searched." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991). A "reasonable nexus" does not require direct evidence that the items listed as the objects of the search are on the premises to be searched. *Id*. The magistrate must "only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.) (citations omitted), *cert. denied*, 474 U.S. 847 (1985). In other words, an affidavit supporting an application for a residential search warrant must demonstrate "reasonable cause to believe that the things listed as the objects of the search are located in the place to be searched." *United States v. Ramos*, 923 F.2d 1346, 1351 (9th Cir.1991).

In this case, Officer Sheridan's affidavit stated that she had training and two years experience with property crime investigation, among other types of investigations. It states that Detectives Reyna and Bayne contacted Officer Sheridan, and described incidents of graffiti and vandalism in Walla Walla, Oregon, similar to incidents Offier Sheridan knew had occurred in

Page -6- OPINION AND ORDER

neighboring Milton-Freewater, Oregon. Detectives Reyna and Bayne had concluded that a group identified as "FPC" or "Freestyle Phugitives Crew" was a graffiti gang, according to Officer Sheridan. The affidavit incorporates the narrative outlining Detective Reyna and Bayne's investigation, which contains the following relevant assertions of fact: (1) Fernando Sanchez was stopped in his vehicle on May 6, 2006 and arrested for possession of drug paraphernalia, marijuana under 40 grams, and driving with a suspended license. (2) In his vehicle officers discovered two sketch books containing "tags," or spray-painted drawings incorporating words, that had been spray painted on utility boxes, retaining walls, hospice homes, school buildings, and private businesses in Walla Walla. Among the tags in these books were "Stain," "FPC," "Ferno," "509," and an eyeball symbol. (3) Fernando Sanchez admitted that the sketch books were his, but he stated that the "tags" that had appeared on public and private property were "done by other people he had allowed to use [one of] the book[s]." He refused to provide names of these people. He later admitted to the existence of the Freestyle Phugitive Crew, and named Bruno Armenta as one of the members. He stated that Bruno Armenta also uses the name "Rawknez." Finally, Fernando Sanchez confirmed that Bruno Armenta is married to Vicky Villalobos. (4) A warrant search of Fernando Sanchez' house turned up: (a) a stenciled design of a spray can and a hand, spray-painted on an interior wall, which had also been spray pointed on Stardust Lanes bowling alley; (b) a t-shirt spray painted with graffiti-style writing of the tags "Rawknez," "Bruno," and "Fernando"; a photograph of the graffiti-style tag "Rawknez" that had been spray-painted on a building, which Detective Reyna recognized to be a nearby elementary school; (c) graffiti-painted road signs containing an eyeball symbol design; (d) a journal containing the tags "Rawknez," incorporated into a "crown design," and the tags "FPC" and

Page -7- OPINION AND ORDER

"Freestyle Phugitives Crew." (5) A warrant search of Fernando Sanchez' car uncovered: (a) an image of "Che" Guevara spray-painted on the side of the car, which was also found spray painted on two trash receptacles in Walla Walla; (b) three spray-paint cans; (c) a shirt covered with spray-paint; (d) a backpack, advertising the website www.freestylephugitives.cjb.net. (6) This web address lead officers to the website www.angelfire.com/hiphop3/freestylephugitive/blah.html. The website contained a member's list, which listed Fernando Sanchez and "Bruno Armenta AKA Rawknezz Monsta," among others. (7) A letter addressed to Vicky Villalobos, found in the inmate outgoing mailbox at the Walla Walla County Jail, contained the address 842222 Prunedale Road, Milton-Freewater, Oregon, 97862. The search engine "Accurint" showed a "Jose Villalobos" residing at 84222 Prundeale Road. (8) Surveillance outside the latter address revealed a black Dodge Durango parked in the driveway, which matched the vehicle Detective Reyna had seen Vicky Villalobos driving on April 14, 2006. The Durango had Oregon license plate 548CBU, which matched the license plate Detective Reyna had reported for the Durango he observed Vicky Villalobos driving that day.

      On these facts alone, this Court cannot say that the magistrate judge clearly erred in finding that there was reasonable cause to believe the things listed as the objects of the search – spray paint cans, photographs, clothing with overspray, and other items evincing graffiti vandalism – would be located at 84222 Prundeale Road. Accordingly, the Court does not find any basis for suppressing the items seized from this residence.

///

///

///

## CONCLUSION

For the reasons given above, Defendants' oral Motions to Reconsider are DENIED, and Defendants' Motions to Suppress (#s 17, 28) are also DENIED.

IT IS SO ORDERED.

Dated this 5th day of September, 2007.

_____
Garr M. King
United States District Judge